IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ANGELINA FREIRE, et al.,

    Plaintiffs,

v.                                        CIVIL ACTION NO. 2:13-cv-9079

AMERICAN MEDICAL SYSTEMS, INC., et al.,

    Defendants.

MEMORANDUM OPINION AND ORDER

## I. Introduction

Pending before the court is a Motion for Summary Judgment [ECF No. 29] filed by Defendant American Medical Systems, Inc. ("AMS"). Also pending before the court is a Motion for Summary Judgment [ECF No. 44] filed by Tissue Science Laboratories Limited ("TSL"). For the reasons that follow, the Motions are **GRANTED**.

## II. Background

This case is one of several thousand assigned to me by the Judicial Panel on Multidistrict Litigation. These cases involve the use of transvaginal surgical mesh to treat pelvic organ prolapse and urinary incontinence.

In 2005, Plaintiff Angelina Freire ("Ms. Freire") saw her primary care physician for treatment of urinary incontinence. Ms. Freire's physician referred her to an obstetrician/gynecologist who implanted her with an AMS SPARC Sling

System[1] on December 5, 2005. Ms. Freire stated in her deposition that she began experiencing symptoms almost immediately after her SPARC implant. She explained in her Plaintiff Fact Sheet ("PFS") that she immediately attributed the symptoms she was having after surgery to the SPARC device:

> I associated my malaise directly with the implants. Almost immediately after the first SPARC Sling implant I began experiencing adverse effects. After the recovery period I started having pain; 36 days after the implantation I was diagnosed with cervicitis and endocervicitis. I also began experiencing long menstrual cycles and bleeding clots. I had lower abdominal tenderness, pelvic pain and lower back pain. My condition and symptoms continued to worsen. I have been dealing with pain and discomfort every day of my life after the surgery and my sex life has been affected in a very dramatic way.

PFS [ECF No. 29-3] 7. Ms. Freire stated further that she knew the pain she was experiencing was "directly related to the mesh because [she] felt the pain, discomfort and worsening symptoms after [she] had the implant." *Id.*

Ms. Freire underwent her first revision surgery in 2007 after her physician told her that there was a problem with her mesh. *Id.* at 6. Her physician recommended removal because of graft erosion and performed a partial removal on August 20, 2007. During the 2007 surgery, Ms. Freire was implanted with TSL's Pelvicol mesh. According to Ms. Freire, the 2007 implants "started to affect [her] body negatively." *Id.* at 8. In 2008, Ms. Freire underwent a procedure to attempt to address the issues with her new implants. Ms. Freire states that in 2012, her physician told

---

[1] The SPARC is a retro-pubic mid-urethral polypropylene mesh sling designed to address stress urinary incontinence.

2

her that the symptoms and problems she was experiencing were caused by the mesh and that the mesh needed to be removed. Pl.'s Dep. 88:4–9 [ECF No. 45-5].

The plaintiffs, however, did not file this lawsuit until 2013, which is when Ms. Freire saw an advertisement for transvaginal mesh litigation on television. The Short-Form Complaint [ECF No. 1], filed on April 25, 2013, named AMS as the only defendant and identified SPARC as the only product at issue. The Complaint asserted all seventeen possible claims. On April 3, 2017, the plaintiffs filed an Amended Short Form Complaint [ECF No. 6] adding C.R. Bard, Inc. and TSL as defendants and again asserting all seventeen possible claims.[2] AMS and TSL have moved for summary judgment on the basis that each of the plaintiffs' claims are time-barred.

### III. Choice of Law

In multidistrict litigation cases, the choice-of-law determination for pre-trial motions hinges upon whether federal or state law governs. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted); *see Toll Bros., Inc. v. Dryvit Sys., Inc.*, 432 F.3d 564, 568 n.4 (4th Cir. 2005)

---

[2] The plaintiffs listed in the Amended Short Form Complaint are Ms. Freire, her husband, and her power of attorney.

3

(applying Connecticut state law in transferred multidistrict litigation case based on diversity jurisdiction).

This case is based on diversity jurisdiction. Federal law thus controls procedural issues and state law controls substantive issues. *Dixon v. Edwards*, 290 F.3d 690, 710 (4th Cir. 2002). The standard for summary judgment is procedural; therefore, the federal standard applies. *Gen. Accident Fire & Life Assurance Co. v. Akzona, Inc.*, 622 F.2d 90, 93 n.5 (4th Cir. 1980). In determining which state substantive law governs this dispute, I must first identify which choice-of-law rules to follow.

In this MDL, this court applies choice-of-law rules of the originating jurisdiction for issues of substantive law. *See Sanchez v. Boston Scientific Corp.*, No. 2:12-CV-05762, 2014 WL 202787, at *3 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the . . . authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). In this case, Ms. Freire was implanted with the products at issue in Illinois and was an Illinois resident at the time of the implants. Therefore, the court applies the choice-of-law rules of Illinois to the plaintiffs' claims. The parties do not dispute that under this approach, Illinois law applies. Therefore, I will apply the Illinois statute of limitations to determine whether the plaintiffs' claims are time-barred.

## IV. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

## V. Discussion

The parties do not dispute that the statute of limitations applicable to the plaintiffs' claims is two years. The plaintiffs argue, however, that their claims are not time-barred because the discovery rule tolled the statute of limitations.

Illinois' discovery rule serves to "postpone the commencement of the relevant statute of limitations until the injured plaintiff knows or reasonably should have known that he has been injured and that his injury was wrongfully caused." *Golla v. Gen. Motors Corp.*, 657 N.E.2d 894, 898 (Ill. 1995); *see Orso v. Bayer Corp.*, No. 04 C 0114, 2009 WL 249235, at *3 (N.D. Ill. Feb. 2, 2009) (holding that once a plaintiff reasonably should have known this, "the party is under an obligation to inquire further to determine whether an actionable wrong was committed"). The term "wrongfully caused," for purposes of determining when a plaintiff reasonably should have discovered that an injury was caused by the defendant's wrongful conduct, "does not mean knowledge by plaintiff of a specific defendant's negligent act or knowledge that an actual wrong was committed." *Hoffman v. Orthopedic Sys., Inc.*, 765 N.E.2d 116, 122 (Ill. App. Ct. 2002). Rather, a person knows or reasonably should know an injury is wrongfully caused when she possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. *Id.* "At that point, the burden is upon plaintiff to inquire further as to the existence of a cause of action." *Id.*

6

### a. Claims Against AMS

The plaintiffs contend that Ms. Freire could not have reasonably known that AMS's SPARC implant was defective until 2013, when she saw an advertisement for transvaginal mesh litigation on television. The court finds this argument inapposite.

First, contrary to the plaintiffs' assertions, Ms. Friere's claims began to accrue when Ms. Freire knew or reasonably should have known that she was injured and that her injury was wrongfully caused—*not* when Ms. Freire became aware of her right to sue. *See Hoffman*, 765 N.E.2d at 122. Ms. Freire knew that she was injured directly after her 2005 surgery. In her PFS, she stated that she began experiencing adverse effects from the SPARC implant "almost immediately." PFS 7.

And by 2007, she knew that her injury was wrongfully caused. A person knows or reasonably should know an injury is wrongfully caused when she possesses sufficient information concerning an injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. *Hoffman*, 765 N.E.2d at 122. Here, Ms. Freire stated that she knew the pain she was experiencing after the SPARC implant was "directly related to the mesh." PFS 7. Moreover, her physician told her in 2007 that there was an issue with her mesh implant leading up to her revision surgery, and she had multiple surgeries to attempt to address the issues with her mesh. *Id.* at 6, 7. At this point, the burden was on Ms. Freire to inquire further as to the existence of a cause of action. *See Orso*, 2009 WL 249235, at *6–7 (granting summary judgment on statute of limitations grounds and holding that the limitations

period began to run after the plaintiff had symptoms from using the product and was told by a physician that there were potential problems resulting from her use of the product). There is no genuine issue of fact as to the time at which the statute of limitations began to run. *See Golla*, 657 N.E.2d at 897 ("If only one conclusion can be drawn from the undisputed facts, then the timeliness of the plaintiff's complaint becomes a question of law for the trial court to determine."). The plaintiffs' claims against AMS became time-barred in 2009, yet the suit was not brought until 2013. For this reason, the court grants AMS's Motion for Summary Judgment.

### b. Claims against TSL

The court now turns to the plaintiffs' claims against TSL and finds them likewise time-barred. Ms. Freire was implanted with TSL's Pelvicol in 2007. Ms. Freire stated that "[t]hings worsened after the first explant surgery on 8/20/2007" when the 2007 "implants started to affect [her] body negatively." PFS 8. As such, Ms. Freire had knowledge of the injury resulting from TSL's Pelvicol almost ten years before asserting any claims against TSL.

Moreover, by 2012, Ms. Freire knew that her injury resulting from the 2007 implants was wrongfully caused. Ms. Freire stated in her deposition that her physician told her in 2012 that the symptoms she was experiencing following her 2007 surgery were "caused by the mesh" and that "the mesh" needed to be removed. Pl.'s Dep. 88:4–7. While Ms. Freire's physician did not specify which manufacturer was responsible for her injuries, a plaintiff need not know of a specific defendant's

8

negligent act or that an actual wrong was committed for the statute of limitations to begin to run. *See Hoffman*, 765 N.E.2d at 122; *see also Orso*, 2009 WL 249235, at *6–7 (holding that the statute of limitations began to run after the plaintiff had symptoms from using the product and was told by a physician that there were potential problems resulting from her use of the product). Ms. Freire knew in 2012 that her injuries resulting from the 2007 surgery were caused by an issue with her mesh implants and was told as much by her physician. Yet the plaintiffs did not bring a claim against TSL until 2017—three years after the statute of limitations had run.

The plaintiffs contend that Ms. Freire could not have reasonably known of her injury resulting from TSL's Pelvicol until 2016 when Ms. Freire received her medical records. This argument is without merit, as the burden was on Ms. Freire to inquire further as to a cause of action against TSL after she knew that her injury was wrongfully caused. "[P]laintiffs who cho[o]se to wait instead of diligently investigating will not be able to avoid summary judgment on statute of limitations grounds." *Mitsias v. I-Flow Corp.*, 959 N.E.2d 94, 109 (Ill. App. Ct. 2011). Accordingly, the plaintiffs' claims against TSL are time-barred, and the court grants TSL's Motion for Summary Judgment.

## VI. Conclusion

For the foregoing reasons, the court **GRANTS** AMS's Motion for Summary Judgment [ECF No. 29] and TSL's Motion for Summary Judgment [ECF No. 44].

9

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: April 11, 2019

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE